UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

UNITED STATES OF AMERICA,

             Plaintiff,

    vs.                       Case No. 21-CR-018-WMC

KELLY HARPER,               Madison, Wisconsin
                               June 24, 2021
                Defendant.     2:20 p.m.

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

STENOGRAPHIC TRANSCRIPT OF PLEA HEARING
HELD BEFORE THE HONORABLE WILLIAM M. CONLEY

APPEARANCES:

For the Plaintiff:
        Office of the United States Attorney
        BY: CHADWICK M. ELGERSMA
        Assistant United States Attorney
        222 West Washington Avenue, Suite 700
        Madison, Wisconsin  53703

For the Defendant:
        Federal Defender Services of Wisconsin, Inc.
        BY: JOSEPH A. BUGNI
        Madison Branch Office
        22 East Mifflin Street, Suite 1000
        Madison, Wisconsin  53703

Also Present:
        Kelly Harper, Defendant

CHERYL A. SEEMAN, RMR, CRR
Official Court Reporter
United States District Court
120 North Henry Street, Room 410
Madison, Wisconsin  53703
1-608-261-5708

1        (Called to order 2:20 p.m.)

2        THE CLERK:  Case No. 21-CR-18, *United States of America v. Kelly Harper*, called for a plea hearing.  May we have the appearances, please?

5        MR. ELGERSMA:  Good afternoon, Your Honor.  Chad Elgersma for the United States.

7        MR. BUGNI:  Good afternoon, Your Honor.  Joe Bugni appearing on behalf of Ms. Harper.

9        THE COURT:  Good afternoon all.  We are here for a plea hearing based on a written plea agreement signed by the defendant on June 9th and previously provided to the Court.  At the outset, I note it does not appear that it has been put on the record that the government has an obligation, under Rule 5(f) of the Federal Rules of Criminal Procedure, to disclose all potential exculpatory evidence consistent with *Brady v. Maryland* and its progeny and that failure to do so timely may result in sanctions, although my understanding is, Mr. Elgersma, that the government is not only aware of its obligation, but believes it has fulfilled it in this case.

21        MR. ELGERSMA:  That's correct, Your Honor.

22        THE COURT:  And, Mr. Bugni, my understanding is, as defense counsel, you have no reason to doubt that that obligation has been satisfied.

25        MR. BUGNI:  That's correct, Your Honor.

1      THE COURT:  All right.  And with that as

2 preliminary then, I'll just confirm with you, Mr. Bugni,

3 that you and your client have received a copy of the

4 one-count indictment and ask whether you wish it read

5 aloud or waive reading.

6      MR. BUGNI:  We have received it and we waive

7 reading, Your Honor.

8      THE COURT:  And, Mr. Elgersma, would you please

9 state the maximum and any applicable minimum penalties

10 that may apply should the defendant be found guilty in the

11 one-count indictment?

12      MR. ELGERSMA:  The defendant has been charged

13 with one count of violating Title 18, United States Code,

14 Section 1958(a), which carries maximum penalties of ten

15 years in prison, a $250,000 fine, a three-year period of

16 supervised release, and a mandatory $100 special

17 assessment.

18      THE COURT:  Mr. Bugni, have you had sufficient

19 time to talk with your client about these possible

20 penalties, as well as the charges against her, and any

21 defenses that she may have to the charges?

22      MR. BUGNI:  I have, Your Honor.

23      THE COURT:  Ms. Harper, then it's my

24 understanding that you do wish to enter a plea today.  Is

25 that correct?

1     THE DEFENDANT:  Yes, Your Honor.

2     THE COURT:  Before accepting your plea, it's my

3 obligation to ensure that you're acting freely and

4 voluntarily, with an understanding of both the charge

5 against you and the consequences of a plea of guilty, and

6 then further to assure that there's a factual basis for

7 your plea.  To do those things, I'll need to ask you a

8 series of questions under oath.  So I would ask that you

9 stand at this time and sworn by our clerk.

10     **KELLY HARPER, DEFENDANT, SWORN**

11     THE COURT:  My first few questions just go to

12 ensuring that you're capable and ready to proceed today.

13 Can you tell me how old you are and how far you progressed

14 in terms of formal education?

15     THE DEFENDANT:  I'm 38 years old and I have a

16 college degree.

17     THE COURT:  And what is your degree in?

18     THE DEFENDANT:  Public health administration.

19     THE COURT:  And where did you earn that?

20     THE DEFENDANT:  University of Arizona.

21     THE COURT:  And were you certified in any way

22 following a graduation?

23     THE DEFENDANT:  No, Your Honor.

24     THE COURT:  And haven't earned any qualifications

25 or certifications on the job?

1          THE DEFENDANT:  No, Your Honor.

2          THE COURT:  Okay.  Is there any reason why you

3  would have trouble understanding the proceedings today in

4  particular, whether because of an illness, whether because

5  you're under the influence of a prescription medication or

6  elicit drug or alcohol, overly tired, any reason at all

7  that you would have trouble understanding the proceedings

8  today?

9          THE DEFENDANT:  No, Your Honor.

10          THE COURT:  Then the last preliminary question:

11  I just want to assure that at this point you've had enough

12  time to talk with your counsel, Mr. Bugni, about the

13  charge against you, the facts the government believes it

14  could prove, the statutory penalties that may apply, and

15  the Federal Sentencing Guidelines and how those guidelines

16  could impact your sentence.  Have you had a chance to talk

17  about all of those things sufficiently with your counsel?

18          THE DEFENDANT:  Yes, Your Honor.

19          THE COURT:  All right.  Then I'm going to begin

20  with the charge against you.  And I'll simply ask you that

21  you tell me, in your own words, what you understand you're

22  being formally charged with doing in the one-count

23  indictment, so what is your understanding of that charge.

24  And there's no magic words.  I just want to make sure you

25  have a general understanding of what you're being charged

1  with.

2         THE DEFENDANT:  Oh, being charged with going on

3  the dark web for soliciting murder-for-hire.

4         THE COURT:  And that's essentially right.  The

5  charge is that from about October 19, 2020, through

6  December 10th of that same year, that you knowingly used

7  the internet with an intent to arrange a murder of a known

8  victim, in violation of the law, using consideration of

9  payment, specifically bitcoin.  You understand that's the

10  essential charge against you?

11         THE DEFENDANT:  Yes, Your Honor.

12         THE COURT:  And do you also understand that if I

13  were to accept your plea and adjudge you guilty that you

14  could be subject to maximum penalties of ten years in

15  prison, a $250,000 fine, three-year period of supervised

16  release and a hundred dollar special assessment, as was

17  just reviewed by the assistant U.S. attorney?

18         THE DEFENDANT:  Yes, Your Honor.

19         THE COURT:  All right.  In addition, if you were

20  to violate the terms and conditions of any period of

21  supervised release, do you understand you could be subject

22  to further penalties, up to and including additional time

23  in prison?

24         THE DEFENDANT:  Yes, Your Honor.

25         THE COURT:  Then I'm going to turn just briefly

1 to the Federal Sentencing Guidelines. I'm sure Mr. Bugni

2 explained the probation office has the first obligation to

3 calculate the guideline range. They'll do that by looking

4 at the number of points attributable to your offense under

5 the guidelines as well as any relevant conduct related to

6 your crime, including any communications that you used as

7 well as the amount that was involved. They would give you

8 credit for acceptance of responsibility, assuming there's

9 no reason to deny you that credit under the guidelines.

10 They would consider your role in this offense, your

11 limited prior criminal record, and other factors that that

12 office deems relevant.

13 The probation office then issues a presentence report

14 that you and your counsel and the government's counsel can

15 object to. And it becomes my obligation to rule on those

16 objections and then to decide what the guideline range is

17 for purposes of sentencing. Do you understand that will

18 be the process?

19 THE DEFENDANT: Yes, Your Honor.

20 THE COURT: While that will be the process, do

21 you also understand that I am not bound to sentence you

22 within the guideline range? I could give you a lower

23 sentence below that range or a higher sentence up to ten

24 years in prison if I believe it better serves the purposes

25 of sentencing.

1          THE DEFENDANT:  Yes, Your Honor.

2          THE COURT:  You are waiving a number of valuable

3 constitutional rights by pleading guilty.  They're set

4 forth at paragraph 2 of the plea agreement and I'm

5 confident that Mr. Bugni has gone through them with you in

6 detail.  I'll just confirm on the record the basic rights

7 you're giving up, beginning with the most fundamental

8 right you have, which is to maintain a plea of not guilty

9 and go forward to a jury trial.  Do you have a general

10 understanding as to what a jury trial would have involved?

11          THE DEFENDANT:  Yes, Your Honor.

12          THE COURT:  What's your general understanding?

13          THE DEFENDANT:  That there are 12 jurors and that

14 they can find you either guilty or not guilty.

15          THE COURT:  And that's essentially right.  Those

16 12 people will be selected by you and your counsel, the

17 government's counsel and me, if we went forward to a

18 trial.  They would come from -- be selected from a larger

19 group of people taken at random from the presidential

20 voting rolls in the Western District of Wisconsin.

21    Once selected, the government would carry the burden

22 of proof throughout.  You could challenge any evidence

23 provided by the government through cross-examination by

24 your counsel or otherwise under the rules of evidence.

25 You could also put on a defense if you chose to, although

1   you're not required to.  You could subpoena witnesses to

2   testify and present other evidence through your counsel.

3   You could even take the stand in your defense, although

4   you could never be required to testify in a criminal case

5   against you.

6       And then ultimately, as you said, whatever evidence

7   is admitted the jury would take back into a separate room

8   and privately deliberate.  Only if all 12 members of the

9   jury agreed that the government had proven your guilt

10  beyond a reasonable doubt could you be adjudged guilty.

11  Do you understand that those are the rights you waive when

12  you waive the right to a jury trial?

13          THE DEFENDANT:  Yes, Your Honor.

14          THE COURT:  By pleading guilty today, do you also

15  understand that you'll be waiving your right against

16  self-incrimination as well as your right to require the

17  government to prove every element of the charge against

18  you?

19          THE DEFENDANT:  Yes, Your Honor.

20          THE COURT:  By pleading to a felony offense

21  today, do you understand that you may also be forfeiting

22  other rights, including the right to vote, the right to

23  hold public office, the right to serve on a jury yourself,

24  as well as the right not only to own, but even to possess

25  a firearm?

1          THE DEFENDANT:  Yes, Your Honor.

2          THE COURT:  And finally, do you understand that

3  you have a right to court-appointed counsel, at government

4  expense if necessary, throughout these proceedings,

5  whether you plead not guilty again and go forward to trial

6  or plead guilty and go forward to sentencing?

7          THE DEFENDANT:  Yes, Your Honor.

8          THE COURT:  And at this time I'm going to ask the

9  assistant U.S. attorney to summarize the basic terms of

10  your written plea agreement.  And I'd ask that you listen

11  closely to the summary, because I will ask your counsel

12  and you afterwards whether the summary is consistent with

13  your understanding of the basic terms of the written plea

14  agreement.

15     Mr. Elgersma, if you would.

16          MR. ELGERSMA:  Thank you, Your Honor.  The

17  complete understanding of the parties is set forth in the

18  signed three-page plea agreement which the government

19  e-filed with the Court.

20     But in summary, paragraph 1 sets forth the

21  defendant's agreement to plead guilty to the one-count

22  indictment in this case.  It also sets forth the maximum

23  penalties for those offenses.

24     In paragraph 2 the defendant acknowledges she is

25  giving up certain rights by pleading guilty which the

1 Court previously reviewed with the defendant.

2     In paragraph 3 the defendant acknowledges her

3 understanding that the plea could have immigration-related

4 consequences if she is not a U.S. citizen, including

5 removal from the United States.

6     In paragraph 4 the parties agree, pursuant to Federal

7 Rule of Criminal Procedure 11(c)(1)(C), and an assessment

8 of the factors set forth in 18 U.S.C. 3553, that a

9 sentence of 72 months is an appropriate disposition in

10 this case.  If the Court accepts the plea, the Court will

11 be bound to sentence the defendant to 72 months in prison.

12 If the Court rejects the plea, the defendant may withdraw

13 her plea.

14     In paragraph 5 the parties agree to recommend that

15 the defendant be housed in a federal correctional facility

16 near her children.  The defendant understands that the

17 Bureau of Prisons is ultimately responsible for making the

18 final decision regarding her placement.

19     In paragraph 6 the United States agrees this guilty

20 plea will completely resolve all possible federal criminal

21 violations that have occurred in the Western District of

22 Wisconsin.

23     In paragraph 7 the defendant agrees to provide a full

24 and truthful accounting of her finances.

25     In paragraph 8 the United States reserves the right

1  to make arguments in support of or in opposition to the

2  sentence imposed by the Court.

3      In paragraph 9 the defendant acknowledges her

4  understanding of the terms of the plea agreement.

5      Finally, in paragraph 10, the defendant acknowledges

6  that the plea agreement dated April 29, 2021, is

7  rescinded.

8          THE COURT:  Mr. Bugni, is the summary just

9  provided by the assistant U.S. attorney consistent with

10 your understanding of the basic terms of the written plea

11 agreement that will control in this case?

12         MR. BUGNI:  It is, Your Honor.

13         THE COURT:  Ms. Harper, is it also consistent

14 with your understanding?

15         THE DEFENDANT:  Yes, Your Honor.

16         THE COURT:  Has anyone made you any other promise

17 than contained in the written plea agreement itself in

18 order to get you to plead guilty today?

19         THE DEFENDANT:  No, Your Honor.

20         THE COURT:  Has anyone threatened or forced you

21 to plead guilty?

22         THE DEFENDANT:  No, Your Honor.

23         THE COURT:  Has anyone told you that by pleading

24 guilty today, you're going to get a particular sentence

25 from this Court other than the agreed upon 72 months,

1  which I would either accept or not accept, and then you

2  could withdraw your plea if I didn't accept it?  Other

3  than that statement, has anyone told you that you're going

4  to get a particular sentence from this Court other than

5  between probation and ten years?

6          THE DEFENDANT:  No, Your Honor.

7          THE COURT:  As you sit here today, except for

8  that statement, do you have reason to think that you know

9  what your actual sentence is going to be?

10          THE DEFENDANT:  Yes, Your Honor.

11          THE COURT:  That's because of the way I asked the

12  question.  Because this is a binding agreement, you do

13  have reason to think 72 months.  But do you understand

14  that I'm not bound by that agreement --

15          THE DEFENDANT:  Yes, Your Honor.

16          THE COURT:  -- and that you could get a different

17  sentence ultimately in this case?

18          THE DEFENDANT:  Yes, Your Honor.

19          THE COURT:  All right.  And do you understand

20  that once you enter a plea of guilty, if I were to accept

21  the binding 72-month sentence, that you would not be free

22  to withdraw your plea?

23          THE DEFENDANT:  Yes, Your Honor.

24          THE COURT:  I should have asked, too, if any --

25  if a victim or victim representatives are present, whether

1  they've been notified of this agreement.

2      MR. ELGERSMA:  Yes, Your Honor, they have been

3  notified.

4      THE COURT:  And to your knowledge have not

5  objected in any way?

6      MR. ELGERSMA:  No, Your Honor, they have not.

7      THE COURT:  All right.  Then at this time I'm

8  going to ask the assistant U.S. attorney to do one final

9  thing and that is to summarize the basic facts the

10  government believes it could have proven had this matter

11  gone forward to trial.  Again I'd ask you to listen

12  closely, because at the end of it, I'm going to ask you if

13  there's anything that's stated that you believe the

14  government could not prove.

15      Mr. Elgersma.

16      MR. ELGERSMA:  Had this case gone to trial,

17  testimony would have shown that in 2020, a group of

18  international journalists were investigating

19  murder-for-hire sites on the dark web.  The journalists

20  developed a technical source that allowed them to monitor

21  chat conversations taking place on at least one of these

22  murder-for-hire sites.

23      From December 3rd through December 10th, 2020, the

24  journalists monitored a conversation between the

25  administrator of the murder-for-hire site and someone with

1  a user name Malik8, spelled M-A-L-I-K, the number 8.  All

2  of these chats related to Malik8 paying bitcoin to the

3  site administrator as compensation for the administrator

4  killing known victim, or hereinafter KV.

5      More specifically, Malik8 sent the site administrator

6  KV's personal identifiable information; a picture of KV, a

7  picture of KV's vehicle, including the license plate;

8  information about where KV worked and KV's phone number.

9  Malik8 told the administrator, quote, "The target needs to

10  be killed."

11      When asked by the site administrator about proof of

12  payments, Malik8 sent a screen capture or a picture of a

13  bitcoin wallet showing a bitcoin balance valued at

14  $5,633.87.  Malik8 told the administrator she was

15  reluctant to transfer any bitcoin until, quote, "the job

16  was done."  Malik8 explained that she already paid a

17  different murder-for-hire site to kill KV, but she was

18  scammed out of the bitcoin.  Malik8 included a screen

19  capture from the first murder-for-hire site showing her

20  bitcoin payment.

21      The journalists brought this information to KV's

22  attention.  They also provided KV with a Word document

23  containing the chat messages and pictures previously

24  discussed.  This information was eventually turned over to

25  the Sun Prairie Police Department and the Federal Bureau

1  of Investigation.

2      The FBI reviewed the documentation provided by the

3  journalists, including Malik8's bitcoin transfer to the

4  first murder-for-hire website.  Using open-source

5  databases, bank records and subpoenaed IP information, the

6  FBI determined that the defendant made this transfer on or

7  about October 19th, 2020, from her residence located in

8  Columbus, Wisconsin.

9      On February 5th, 2021, FBI agents executed a search

10 warrant at the defendant's house and found a picture on

11 her computer from an MS-13 murder-for-hire dark web site

12 as well as one of the pictures Malik8 sent to the

13 murder-for-hire site administrator.  Agents also found

14 bank records with the onion address, or the website

15 address, of a murder-for-hire site written on the back.

16      As agents executed the search warrant at the

17 defendant's residence, law enforcement interviewed the

18 defendant.  During this interview, the defendant admitted

19 to paying bitcoin to the administrator of a

20 murder-for-hire dark web site in order to have KV killed.

21      Finally, Your Honor, I'd ask that the Court take

22 judicial notice that Columbus, Wisconsin is in the Western

23 District of Wisconsin.

24          THE COURT:  Counsel, it perhaps was intentional,

25 but if you mentioned it, I didn't hear what the original

1  payment or transfer was on October 19.

2          MR. ELGERSMA:  That was not included, Your Honor.

3          THE COURT:  All right.  Mr. Bugni, from what you

4  know about the record in this case, is there anything just

5  reviewed by the assistant U.S. attorney that you believe

6  the government could not prove at trial?

7          MR. BUGNI:  No, Your Honor.

8          THE COURT:  Ms. Harper, is there anything that

9  you think the government could not prove?

10          THE DEFENDANT:  No, Your Honor.

11          THE COURT:  Then I would just ask you to tell me,

12  in your own words, what it is you did, what it is that

13  you're proposing to plead guilty to.

14          THE DEFENDANT:  Okay.  I was going through a

15  tumultuous custody battle with KV.  He had abused our

16  children emotionally and physically for many years.  I

17  reported it to police, guardian ad litems [verbatim];

18  there had been many court cases, CPS reports; and no one

19  would listen or do anything to stop the abuse and help my

20  children.  It was my divine right, as a mother, to protect

21  my children and help them from suffering.  I was desperate

22  and in a very dark place, went on the dark web to find

23  someone to kill KV.  I am deeply and sincerely sorry for

24  my action.

25          THE COURT:  And just so we're clear for purposes

1 | of your plea today, it's correct that you did use this
2 | name "Malik8" to go onto a murder-for-hire site and seek
3 | the administrator of the site to agree to kill what we're
4 | calling "KV" in exchange for a bitcoin payment of roughly
5 | over $5,000?  Am I accurately stating the basic facts?
6 |             MR. BUGNI:  Can I have one second?
7 |             THE COURT:  If you have any confusion -- why
8 | don't we break it down.  First of all, is it correct that
9 | you were Malik8 on the murder-for-hire site?
10 |             THE DEFENDANT:  Yes, Your Honor, that's correct.
11 |             THE COURT:  Okay.  And is it also correct that
12 | you were seeking on that site to have KV killed?
13 |             THE DEFENDANT:  Yes, Your Honor, that's correct.
14 |             THE COURT:  And that as proof of your willingness
15 | to pay for that killing that you provided a screenshot of
16 | your bitcoin wallet containing a little over $5,000?
17 |             THE DEFENDANT:  The $5,000 is not correct, but
18 | the bitcoin wallet is correct.
19 |             THE COURT:  And perhaps I had the number wrong.
20 |             MR. ELGERSMA:  Your Honor, I can provide some
21 | clarification on that.
22 |             THE COURT:  Sure.
23 |             MR. ELGERSMA:  The first payment, so the payment
24 | that actually went through, was valued at approximately at
25 | the time -- so bitcoin fluctuates -- at the time was

1 approximately $1,438.45.

2      THE COURT:  All right.  And the second -- and the

3 amount shown on the screen caption of the bitcoin wallet

4 in the second transaction was what?

5      MR. ELGERSMA:  $5,633.87.

6      THE COURT:  All right.  And it may be that --

7      THE DEFENDANT:  There was no second transaction

8 though.

9      THE COURT:  Oh, I see what you're saying.  All

10 I'm asking is did you provide a screenshot, in your

11 discussions on the possibility of paying for the murder, a

12 screenshot of money in your bitcoin account?

13      THE DEFENDANT:  Yes, Your Honor, I provided a

14 screenshot with the amount.

15      THE COURT:  You hadn't agreed on the amount at

16 that point?

17      THE DEFENDANT:  Correct, Your Honor.

18      THE COURT:  Okay.  But it was your intent to

19 negotiate the killing of KV?

20      THE DEFENDANT:  Yes, Your Honor.

21      THE COURT:  Any further allocution that the

22 government believes is necessary before I ask for a plea?

23      MR. ELGERSMA:  No, Your Honor.

24      THE COURT:  Any reason why I should not ask for a

25 plea from your client at this time, Mr. Bugni?

1          MR. BUGNI:  No, Your Honor.

2          THE COURT:  Then I will ask, Ms. Harper,

3     formally, how do you plead to the one-count indictment?

4          THE DEFENDANT:  I plead guilty, Your Honor.

5          THE COURT:  Based on my discussion with you

6     today, as well as with your counsel and the record in the

7     case as a whole, I am satisfied that you have entered a

8     plea of guilty knowingly and voluntarily after adequate

9     opportunity to consult with counsel and that you have an

10    understanding of both the nature of the charge as well as

11    the consequences of a plea of guilty.  I am also satisfied

12    that there is a factual basis for your plea.  And

13    accordingly, I do find and adjudge you guilty of the

14    one-count indictment and I accept the plea agreement

15    conditionally pending review of the presentence report.

16         That report will be due on August 12th, with

17    objections due August 26th and sentencing to proceed on

18    September 30th, 2021, at 1 p.m.  I believe those are dates

19    already agreed on by the parties, but I'll hear first from

20    the government if there's anything more.

21         MR. ELGERSMA:  Nothing, Your Honor.

22         THE COURT:  Anything more for the defense?

23         MR. BUGNI:  No, Your Honor.

24         THE COURT:  Ms. Harper, you've been ably

25    represented by Mr. Bugni and he'll advise you as to

1   cooperating in preparation of the presentence report.  I

2   urge you to follow his advice, because it's his job to

3   look out for your interests.  On the other hand, I begin

4   thinking about a sentence, and in this case the

5   appropriateness of the binding sentence, based on that

6   presentence report.  To the extent you agree to, I would

7   encourage your cooperation.

8        I will consider any other information I'm provided as

9   long as I get it at least two days before sentencing.  As

10  Mr. Bugni knows, the sooner I get it, the more it can be

11  vetted and therefore the more confidence I can have in it

12  for sentencing.  And I will see both parties on September

13  30th for sentencing.

14          THE DEFENDANT:  Thank you, Your Honor.

15        (Adjourned at 2:44 p.m.)

16                          ***

17

18

19

20

21

22

23

24

25

1           I, CHERYL A. SEEMAN, Certified Realtime and Merit

2   Reporter, in and for the State of Wisconsin, certify that

3   the foregoing is a true and accurate record of the

4   proceedings held on the 24th day of June, 2021, before

5   the Honorable William M. Conley, of the Western District

6   of Wisconsin, in my presence and reduced to writing in

7   accordance with my stenographic notes made at said time

8   and place.

9   Dated this 8th day of August, 2022.

10

11

12

13

14

15                          /s/

16                          Cheryl A. Seeman, RMR, CRR
                            Federal Court Reporter

17

18

19

20

21

22

    The foregoing certification of this transcript does not

23  apply to any reproduction of the same by any means unless
    under the direct control and/or direction of the

24  certifying reporter.

25